# NEW YORK CONTINENTAL JEWELL FILTRATION COMPANY *v.* DISTRICT OF COLUMBIA.

EVIDENCE; CONTRACTS; UNION STATION ACTS OF CONGRESS; STATUTES.

1. In an action by a contractor with a railroad company which was required by statute to construct, under the supervision of the municipality, certain tunnels in the course of extensive improvements of a public nature, to recover from the municipality a balance claimed by the contractor upon deposits of money made by it with the municipality to cover the cost of the work of relocating sewers and water mains, made necessary by the construction of the tunnels, which work was performed by the municipality at the request of the contractor, a permit issued to the railroad company by the municipality, authorizing it to proceed with the work, and the contract between the contractor and the railroad company, are admissible in evidence upon the offer of the defendant,—the permit, for the purpose of showing the obligation assumed by the railroad company, and the interpretation placed by it and the municipality upon the statute, and the contract, for the purpose of showing the intention of the contractor at the time it made the deposits, the extent of its agency, and as an admission of the parties of their understanding of the obligations imposed by the permit. .

2. In determining whether a railroad company or a contractor with it or the District of Columbia should bear the cost of certain work made necessary by the Union station improvements in the city of Washington, the provisions of the act of February 28, 1903 (32 Stat. at L. 909, chap. 856), known as the "Union station act," changing the

plan of the proposed improvement from that contemplated by the act of February 12, 1901 (31 Stat. at L. 767, chap. 353), will be followed, where the provision of the earlier act cannot be read into the later one without doing violence to its express terms and intent.

3. Where a railroad company contracted with a contracting company to do certain tunnel construction work which it was required to do by statute, and the contracting company entered into an agreement with the municipality, whereby the latter was to perform the work of relocating sewers and water mains, made necessary by the construction of the tunnels, and deposited with the municipality the estimated cost of such work, and it appeared that a permit to do the sewer and water main work was issued by the municipality to the railroad company, specifying the manner in which the work was to be done, after the contracting company sought to have the municipality do the work, but before it entered into its contract with the railroad company, and before it made its deposit with the municipality,—it was *held,* in a suit by the contracting company against the municipality, to recover a balance alleged to be due it on account of the deposit so made, that (1) that the burden was on the plaintiff to show that it had no knowledge of the terms of the permit, and the record failed to so show, but indicated to the contrary, and that it was bound by its terms.    (2) That the plaintiff had no right to assert rights under the statute authorizing the tunnel construction work; and (3) that, even if the railroad company and the municipality made a mistake in construing the terms of the statute as to the relocating of the sewers and water mains, the plaintiff was not in a position to demand its correction.

No. 1938.    Submitted April 7, 1909.    Decided May 17, 1909.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict directed by the court, in an action to recover a balance claimed to be due for money deposited with the defendant.    *Affirmed.*

The facts are stated in the opinion.

*Mr. James H. Hayden, Mr. Robert C. Hayden,* and *Mr. George W. Dalzell* for the appellant.

*Mr. E. H. Thomas,* Corporation Counsel, and *Mr. William Henry White,* Assistant, for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is a suit in assumpsit brought in the supreme court of the District of Columbia by the appellant, the New York Continental Jewell Filtration Company, plaintiff below, to recover from the District of Columbia the sum of $7,172.97, a balance claimed by plaintiff to be due upon certain deposits made by the plaintiff with the District of Columbia to cover the cost of certain work performed by the District for plaintiff.

The case arises in connection with the relocation of sewers and water mains, necessitated by the construction of two tunnels for the Philadelphia, Baltimore, & Washington Railroad Company, extending from New Jersey avenue and "D" street, southeast, to the corner of First and "E" streets, northeast, in the city of Washington. On February 12, 1901, Congress passed an act entitled, "An Act to Provide for Eliminating Certain Grade Crossings on the Line of the Baltimore & Potomac Railroad Company, in the City of Washington, District of Columbia, and Requiring Said Company to Depress and Elevate Its Tracks, and to Enable It to Relocate Parts of Its Railroad Therein, and for other purposes." (31 Stat. at L. 767, chap. 353.) This act provided for an extensive scheme of public improvement. It described in detail the changes to be made in the grades of streets in connection with the change of the location of the railroad company's tracks and station. Section 9 of the act, making provision in respect to the cost of the work, is as follows:

"Sec. 9. That the entire cost and expenses of the revision, changes, relocations, and improvements of and in said railroad, as authorized and required by the preceding sections of this act, and of all structures connected therewith or incidental thereto, shall be borne, paid, and defrayed in manner following, to wit: The said Baltimore & Potomac Railroad Company shall bear, pay, and defray all cost and expense of the relocations, elevation, and depression of its tracks within the limits of its right of way as are authorized and required by this act, including the construction of so much of the bridges conveying streets over its

tracks, right of way, and other property as shall be within the limits thereof, and the reconstruction within such limits of the streets which shall be carried beneath the same, the cost and expense of removing its tracks from Sixth street, north of Virginia avenue, and from K street and Canal street, and the restoration of such parts of said streets for the uses of the public, and the cost and expense of constructing and maintaining the arch or arches for passageways underneath its said tracks located on the Mall, as well as the original cost of paving the roadways and sidewalks to be located within the said passageways. All other costs, expenses, and damages resulting from, incidental to, or connected with the revisions, changes, and improvements in alignment and grades of said railroad, or the relocations thereof by this act required and authorized, and from changes in the grades of the streets or the railroad, and the lawful operation of the said railroad upon the location and structures contemplated and required by this act, and whether to property owners affected thereby or otherwise, as well as the cost and expense of all street approaches to said company's tracks and right of way, whether overhead by means of bridges or under grade, shall be borne, paid, and defrayed in manner following, to wit: Fifty per centum thereof by the United States and the remaining fifty per centum thereof by the District of Columbia, which last-mentioned fifty per centum shall be levied and assessed upon the taxable property and privileges in said District other than the property of the United States and of the District of Columbia.

"All work within the limits of the said railroad company's right of way, including the bridges within said limits, shall be done by said railroad company to the satisfaction and approval of the commissioners of the District of Columbia, who are authorized to exercise such supervision over the same as may be necessary to secure the proper construction and maintenance of the said work. And all work which is without the limits of the right of way of said railroad company shall be done by the District of Columbia."

On February 28, 1903, Congress passed what is known as

the Union station act (32 Stat. at L. 909, chap. 856). By the provisions of this act, radical changes were made in the improvement contemplated by the act of 1901. Among other things, it required the construction of the tunnels here in question. This act provides in sec. 8 as follows:

"The construction of the lines of railroad hereinbefore mentioned, connecting the railroad of said Philadelphia, Baltimore, & Washington Railroad Company with said main passenger station and terminal, whether constructed wholly by said Philadelphia, Baltimore & Washington Railroad Company or said terminal company, or partly by each, shall relieve said Philadelphia, Baltimore & Washington Railroad Company of any and all duties and obligations respecting relocation of its present passenger tracks and terminal, and location, construction, and operation of new passenger station and new terminal tracks, as prescribed in the act relating to the Baltimore & Potomac Railroad Company, approved February twelfth, nineteen hundred and one; and, upon completion, either by said Philadelphia, Baltimore & Washington Railroad Company, or said terminal company, or in part by one and in part by the other, of said connecting lines of railroad, ready for use, in connection with said main passenger station and terminal, as contemplated by this act, and within five years from the passage of this act the said Philadelphia, Baltimore, & Washington Railroad Company shall be, and it is hereby required to remove its present eastern connection between its passenger station and its line on Virginia avenue *via* Sixth street, including the tracks on Sixth street, and its western connection *via* Maryland avenue, and to convey its passenger station building to the United States. And in consideration thereof, and of the relinquishment and surrender by said Philadelphia, Baltimore, & Washington Railroad Company of its right to occupy and use a portion of the Mall, and to maintain thereon a new passenger station and terminals, granted to the Baltimore & Potomac Railroad Company by the act aforesaid in consideration of and as a contribution toward the large expenditures to be made by said company in the relocation and improvement of its line of railroad, and elimina-

tion of grade crossings resulting therefrom, as required by said act, the sum of one million, five hundred thousand dollars shall be paid to said Philadelphia, Baltimore & Washington Railroad Company, its successors and assigns, out of any moneys in the Treasury of the United States not otherwise appropriated, and said sum of one million, five hundred thousand dollars is hereby expressly appropriated for this purpose, and shall be paid upon presentation of a certificate by the commissioners of the District of Columbia that said passenger station and terminal and connecting lines of railroad contemplated by this act are ready for occupancy. Except as modified by this act, all provisions of said act relating to the Baltimore & Potomac Railroad Company, approved February twelfth, nineteen hundred and one, and all rights, powers, remedies, and processes thereby conferred on said last-named company, or upon Southern Railway Company, shall remain and continue in full force, and with like effect as if herein re-enacted at length; and all rights, powers, and privileges granted to, or duties imposed upon, said Philadelphia, Baltimore, & Washington Railroad Company by this act shall accrue to and devolve upon its successors and assigns, as provided with respect to the Baltimore & Potomac Railroad Company by section fifteen of said act relating to said Baltimore & Potomac Railroad Company, approved February twelfth, nineteen hundred and one, and all provisions of said section shall be applicable thereto, in all respects, and in like manner as they are made applicable to the rights, privileges, and duties granted to or imposed upon said company by said last-mentioned act."

In pursuance of the foregoing acts of Congress, the Philadelphia, Baltimore, & Washington Railroad Company, about April 1, 1903, prepared a plat of its proposed line extending from Second street and Virginia avenue, southwest, to First street and Massachusetts avenue, northeast. This embraced the change necessary to connect its tracks with the new Union station. The plat, which is in evidence, shows distinctly the course of the tunnels here in question. Shortly thereafter, it appears that the plaintiff company opened negotiations with the railroad company, which culminated, in December, 1903, in a

contract whereby the plaintiff undertook the construction of the tunnels. Early in July of the same year, the plaintiff's engineer took up with the engineer commissioner of the District of Columbia the matter of the changes and relocations of sewers and water mains which would be required in consequence of the construction of the tunnels. A proposition was made by the plaintiff that the District perform that portion of the work involved in changing and relocating the sewers and water mains. It appears from the record that plaintiff's engineer and the engineer commissioner of the District entered into the matter of the changes and relocations of sewers and water mains with considerable detail; a plat showing the necessary changes was before them and consulted, and the proposition to have the District do this work was practically agreed upon, as evidenced by a letter from Commissioner Biddle to the plaintiff, as follows:

Washington, July 22, 1903.

The New York Continental Jewell Filtration Company,
    New York, N. Y.

Gentlemen:—

Referring to our oral conversation of July 16, in which you requested that the sewer and water changes necessary on account of the construction of the tunnel of the Pennsylvania R. R. Company, this city, be made by this office, and the plat which you left with me, I would state that the estimated cost of making the changes in the sewers is $7,693, and of changes in water mains is $488. Deposit slips for these amounts are herewith, and the deposits should be made separately, and upon receipt of the deposits the work will be done by this office. The water department made some modification of the plan suggested by you in the drawings which you left, with the object of obtaining better circulation, and the sewer division increases the size and slope of the proposed new portion of sewer. I return your suggested plan.                    Very respectfully,

John Biddle,

Major, Corps of Engineers, U. S. A.

Engineer Commissioner, D. C.

On July 20th and 21st, respectively, the following estimates of cost of making the necessary changes in the sewers and water mains were furnished by defendant to plaintiff:

Washington, July 20, 1903.

The N. Y. Continental Jewell Filtration Co.

Dear Sirs:—The estimated cost to you for making necessary changes in water mains caused by construction of tunnel N. J. ave. and D street, S. E., is $488. If you wish the District to do the work, please deposit said amount and this paper with the collector of taxes of the District of Columbia.

Very respectfully yours,

Chester Harding,

Captain, Corps of Engineers, U. S. A.

Washington, July 21, 1903.

The N. Y. Continental Jewell Filtration Co.

Dear Sirs:—The estimated cost to you for making necessary changes in sewers caused by construction of tunnel N. J. ave. and D street, S. E., is $7,693. If you wish the District to do the work, please deposit said amount and this paper with the collector of taxes of the District of Columbia.

Very respectfully yours,

Chester Harding,

Captain, Corps of Engineers, U. S. A.

On September 10, 1903, a permit was issued to the railroad company and accepted by it, which prescribed in detail the manner in which the work was to be performed. The permit, among other things, provided:

"All work shall be done in accordance with the plans approved by the commissioners of the District of Columbia, at the risk and expense of the Philadelphia, Baltimore, & Washington Railroad Company, and the responsibility for any and all accidents and damages to persons and property directly or indirectly resulting from, due to, or connected with, the construction, maintenance, or operation of the work, whether done by the P. B. &

W. R. R. Co., or others in connection with it, shall be assumed by the Philadelphia, Baltimore, & Washington Railroad Company.

\*     \*     \*

"All construction material and public property of whatever nature taken out of the street, and not previously paid for by the railroad company, shall be disposed of as the engineer commissioner of the District of Columbia shall direct, and any such material or property, destroyed or unaccounted for, must be paid for or replaced by the Philadelphia, Baltimore, & Washington Railroad Company, and no sewer, water, or lighting fixtures or appurtenances to the premises of any abutting property shall be disturbed or destroyed until provision has been made by said railroad company for continuing such service, it being the intention hereby that no property shall be deprived of any such privilege now enjoyed.

"Inspectors representing the commissioners of the District of Columbia, and appointed for the purpose, shall have access to the work at all times. They will look after the public interests and convenience, and also see that the laws, regulations, and ordinances of the United States and District of Columbia are complied with, and it shall be their duty to invite attention to any neglect, oversight, or disregard of the terms of this permit, and to insist upon their enforcement."

The issuance of this permit by the District, and its acceptance by the railroad company, was followed on December 10th by the contract between the plaintiff and the railroad company, which, for the consideration therein expressed, required the plaintiff to do all the work involved in the construction of the tunnels in question. This contract, among other things, provided:

"3. The contractor agrees, at its own cost and expense, to take care of and provide all necessary false work, machinery, and appliances and labor for sustaining, guarding, removing, changing, or altering all water mains and gas pipes, sewers, passenger railway tracks and railway, telephone, electric light, and other conduits, and any other lawful obstruction which it may encounter in doing the work upon the tunnels, and also for

supporting and sustaining the streets, avenues, sidewalks, and alleys over said tunnels and all buildings and structures thereon and traffic thereover, and also agrees to obtain from the proper authorities of the District of Columbia the necessary permits to make any changes which may be necessary in said streets, avenues, alleys, or sidewalks, or in the location of said water mains and gas pipes, sewers, tracks, and conduits, and, after the completion of said tunnels, agrees to restore the streets, avenues, sidewalks, and alleys which may be interfered with by the construction of the same to the condition in which they are at present, to the satisfaction of the commissioners of the District of Columbia, within sixty (60) days after the date when said tunnels shall have been completed. Provided that the contractor shall not be called upon to regrade any streets, avenues, sidewalks, or alleys whose present grade is below the line of the top of the tunnels."

Five days after the signing of the above contract, the plaintiff deposited with the District, as suggested in the estimates of July 20th and 21st, and the letter of July 22d, the sum of $7,693. On the same date, $488 were deposited by plaintiff to meet the expense of changing and relocating the water mains. Subsequently, on April 22, 1904, upon a further estimate submitted, $600 more were deposited for the same purpose.

On May 11, 1904, plaintiff called upon the defendant for a statement of the cost of making the changes in the sewers and water mains, and for a return of all the unexpended balance of the amount deposited. Defendant replied that the total cost of changing the water mains, as required by the Department, was $1,010.89, leaving a balance of the deposits for that purpose of $79.11, and that the total cost of making necessary changes in sewers, caused by construction of the tunnel, as required by the department, was $6,970.13, leaving an unexpended balance of the deposit of $722.87. It is conceded that, of this entire expenditure, only $1,608.03 were used in making changes within the right of way of the railroad company. Plaintiff claims the right to recover all of the deposits over and above this amount, while defendant contends that it is entitled to withhold suf-

ficient of the deposits to compensate it for making the changes
caused by the construction of the tunnels, both within and with-
out the right of way of the railroad company.

When the evidence was submitted, the court, on request of
counsel for defendant, instructed the jury to return a verdict for
plaintiff for $1,089.79, with interest from June 21, 1904.
From the judgment entered thereon, plaintiff prosecutes this
appeal.

Inasmuch as the Philadelphia, Baltimore, & Washington
Railroad Company was obligated to construct these tunnels un-
der the terms of the foregoing acts of Congress, and the work was
to be performed upon plans to be approved by the commission-
ers of the District of Columbia (32 Stat. at L. 915, chap. 856),
it is proper to inquire into the nature of the relations existing
between the District and the railroad company. That relation
was not strictly a contractual one. The railroad company had
imposed upon it the duty of making a vast improvement of a
public nature, in return for which it was to be paid a large sum
of money and extended certain valuable privileges and fran-
chises. The duty of the officers of the District was to see that
the work was accomplished as required by law, and in a manner
best suited to subserve the public welfare. Accordingly, after
plans had been submitted and approved, on September 10,
1903, a permit was issued to the railroad company by the prop-
er officer of the District, authorizing it to proceed with the work,
and directing the manner in which it should be performed. This
permit was brought into the record over the objection of counsel
for plaintiff. No error was committed in admitting it.
Through it we may ascertain the obligation assumed by the rail-
road company, the interpretation placed by the company and the
District upon the acts of Congress, and their understanding of
the obligations imposed upon them. Under the restrictions of
the permit, the railroad company undertook the work.

Subsequently, on December 10, 1903, the railroad company
entered into a contract with the plaintiff corporation, whereby
the plaintiff obligated itself "to furnish all material and provide
all labor necessary for, and construct, finish, and deliver within

four hundred (400) working days" the tunnels here in question. By this contract, plaintiff became the agent of the railroad company. It obligated itself to perform the work under the terms of the permit, and subject to the supervision of the proper officers of the District. When it made the deposits in question to reimburse the District for doing, at plaintiff's request, a portion of the work which devolved upon it under its contract with the railroad company, it was to reimburse the District for doing work which the company was obligated to perform. This obligation, we think, from a reasonable construction of the terms of the permit, involved all the work and expense of relocating and replacing the water mains and sewers, both within and outside of the right of way, and the contract of plaintiff with the railroad company clearly discloses such an understanding by plaintiff at the time of its execution. This contract was admitted over the objection of counsel for plaintiff, and its admission is assigned as error. The contract was admissible for the purpose of throwing light upon the understanding and intention of the plaintiff at the time of making the deposits, and the extent of its agency, as well as an admission by the parties of their understanding of the obligations imposed by the terms of the permit. This was a proper inquiry, since the duty of the railroad company became the duty of plaintiff. It is well settled that "the liability of third persons to an agent upon a contract made with him is to be ascertained by that contract alone, and cannot be enlarged by reference to any agreement between the agent and the principal by which their mutual rights are to be determined." Mechem, Agency, sec. 759. But this rule cannot apply to a case where the person subcontracting with the agent and the person for whom the work is to be done is the same person; for, in that instance, there is direct privity between the principal and subcontractor. But the case at bar is stronger than that. Here, we have found that, strictly speaking, there was no contractual relation between the railroad company and the District. The officers of the District, who, on its behalf, undertook to perform the work in question for the agent of the railroad company,

were powerless, under the statute, to enlarge the rights of the plaintiff beyond those conferred by law upon its principal.

We think these transactions are to be construed entirely in the light of the act of Congress of 1903, and not by the act of 1901. Section 9 of the former act, relating to division of cost, had no reference to the construction of the tunnels. It related to an entirely different plan of improvement; it made no reference to the replacing of the water mains and sewers. It contemplated a division of expense between the railroad company named therein and the District of Columbia; while the later act imposed upon the Philadelphia, Baltimore, & Washington Railroad Company the obligation of doing the entire work, without qualification, and, in consideration thereof, provided that it should be paid by the United States, $1,500,000. The act of 1903, being clear in its provisions as to the obligations imposed upon the railroad company and the corresponding duty imposed upon the District, the provisions of sec. 9 of the act of 1901 cannot be read into it without doing violence to the express terms and intent of the later act.

A false impression seems to exist in the mind of counsel for plaintiff as to the effect upon plaintiff of the acts of the railroad company between the inception and conclusion of the arrangements between plaintiff and defendant. Counsel insists that, since the permit was issued to the railroad company after the offer was made to have the District do the work, any change or modification of the situation occasioned by the terms of the permit, or otherwise, without notice to plaintiff, was a matter between the railroad company and the District, and any obligation imposed by such change upon the railroad company would not be chargeable to plaintiff. We do not attach importance to this contention, for the reason that the status of the parties before us did not become fixed until the negotiations were completed by the plaintiff's making the deposits. The contract had then been executed, and the District had the right to rely upon the plaintiff, as the agent of the railroad company, to carry out the requirements of the permit. If the railroad company concealed from plaintiff obligations thus assumed, and plaintiff

was damaged thereby, it may well be that it had a cause of action against the company. But with that we are not concerned.

It is insisted by the plaintiff that there is no proof that it had notice of the terms of the permit when it contracted with the railroad company. We can arrive at no other conclusion than that the permit was fully considered when the contract was made. Especially will such a presumption be indulged when the contract, upon its face, strongly supports such a conclusion. The burden of proof was upon the plaintiff, and the record is silent as to any lack of notice by plaintiff of the terms of the permit before making the deposits. Hence, it is not in position to claim such a presumption in its favor. Indeed, it would be difficult to conceive of any misunderstanding, in view of the conversations of plaintiff's engineer with the engineer commissioner of the District when this work was fully considered, with a plat before them showing in detail the entire work to be accomplished, the correspondence between them, the estimates furnished, the correspondence relating to the deposits, and the issuance of the permit, all of which occurred long prior to the making of the contract. This conclusion is emphasized by the promptness with which the plaintiff, without further correspondence or conversation, made the deposits after the contract was signed.

The position of the plaintiff as here presented is wholly inconsistent. It is not in a position to assert rights under the statute. Its relation throughout is a contractual one intermediate between the original parties, whose respective duties were established by the acts of Congress. Even assuming that the railroad company and the District made a mistake in construing the terms of the statute as to the relocating and replacing of the water mains and sewers, plaintiff is not in position to here demand its correction. It assumed the obligation of the railroad as the company understood it, and with which, so far as the record discloses, the company is content. The railroad company contracted to pay plaintiff for doing the work on that basis. Hence, if the company and the District made a mistake in interpreting their respective obligations, the plaintiff has not been injured, and cannot avail itself of that mistake.

The case, therefore, resolves itself to this: that the work here performed for the plaintiff by the District was work imposed by the act of Congress upon the railroad company, and, in turn, by express contract- upon the plaintiff. Plaintiff has done nothing more than it was required to do under its contract with its principal. If, after it had contracted to do the work, it found that it had been deceived by the railroad company, that is a matter with which the defendant is not concerned. In any view of the case, plaintiff has no right of recovery; hence, no error was committed in instructing a verdict for defendant.

The judgment is affirmed with costs, and it is so ordered.

*Affirmed.*

A writ of error to the Supreme Court of the United States, applied for by the appellant, was allowed June 1, 1909.